**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

FRANKLIN BASNIGHT,

       Plaintiff,

v.                                Civil Action No. 2:04cv782

HRSA-ILA,

MANAGEMENT,

and

JOHN BOWERS, President,
International Longshoremen's Association,

       Defendants.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference entered on July 21, 2005 (Document No. 21).

### I. PROCEDURAL BACKGROUND

#### A. Plaintiff's Lawsuit

Plaintiff, Franklin Basnight ("Basnight"), brought this pro se[1] action seeking to recover damages for alleged losses suffered

---

[1] On March 25, 2005, Plaintiff filed a Motion for Appointment of Counsel (Document No. 8). This motion was denied by Order entered May 11, 2005 (Document No. 16). Plaintiff then filed, on May 23, 2005, a Motion to Rescind that order and for a 40-day extension of time to obtain counsel (Document No. 17). The Motion

while he was working as a longshoreman at the port of Hampton
Roads.   Specifically, Basnight alleged that he was improperly
classified as a "new employee" and he suffered a corresponding wage
reduction.   Basnight alleged that because he previously "worked in
the [International Longshoremen's Association] industry in 1978,
1979 and again [from] 1998 to 1999," he should not have been
subject to the reduced wages under the definition of a "new
employee" agreed upon by "management and labor" and as stated in
the "Master Agreement."[2]   After exhausting his internal
administrative remedies, <u>see infra</u>, Basnight now asserts a claim
for a wage rate of $28.00 per hour and back pay for the time period
during which his wages were reduced.[3]   Basnight's complaint
("Original Complaint"), presented to the Court in the form of a

_____

to [Vacate] Order on Motion to Appoint Counsel was denied by Order
filed March 24, 2006 (Document No. 22). Plaintiff subsequently
filed, subject to defect, a Motion to Amend his request for counsel
on April 7, 2006 (Document No. 23). This motion was denied by Order
filed April 21, 2006 (Document No. 25).

   [2]The Court assumes that when Basnight refers to the "Master
Agreement" he is referring to the Collective Bargaining Agreement
("CBA"), <u>see infra</u>, attached as Exhibit A to the Management
Defendants' Motion for Summary Judgment (Document No. 9). Basnight
refers to paragraph 2(A) of the CBA, which sets forth various
tiered levels of employee wages, to support his argument that he
should not be classified as a "new employee" for the purpose of
determining his wage rate and that his wage rate should be $28.00
per hour.

   [3]The Court notes that Basnight asserted various amounts for
the wage rate due to him under the CBA, ranging from $27.00 to
$29.00 per hour; the Court assumes that these are inflation-
adjusted figures from the date the instant lawsuit was initiated on
December 30, 2004, to the present.

three-page narrative, was received on December 30, 2004, and was filed by the clerk as directed by the Court's order of January 7, 2005 (Document No. 2).[4]   On February 9, 2005, Basnight filed an amended complaint ("Amended Complaint"), consisting of a five-page narrative (Document No. 4).   The Amended Complaint essentially restated the same allegations as presented in the Original Complaint, reasserting Basnight's claim for a wage rate of $28.00 per hour, back pay for the time his wages were reduced to $17.00 per hour, and it added John Bowers ("Bowers"), President of the International Longshoremen's Association ("ILA"), as a named defendant, and asserted an additional claim seeking compensation for mental distress and anguish, and other associated losses, such as two (2) retail clothing businesses, personal diamonds and jewelry and three (3) vehicles, in the amount of ten (10) million dollars (Document No. 4).[5]

---

[4]The Original Complaint was submitted as a proposed complaint attached to a Motion to Proceed in Forma Pauperis (Document No. 1). The Court granted that motion by Order entered January 7, 2005 (Document No. 2).

[5]In Basnight's Amended Complaint, he stated:

> They have moved and transferred my hours from under me, changed my 40-year work history from old to new, changed my pay rate from $27.00 an hour to $17.00.  They have moved me from under the master contract, and transferred me under another agreement, and they knew I was under [sic] grandfather clause in the master contract.

Amended Complaint, at 3.  Basnight does not, however, specify who

## B. __The Party Defendants__

Basnight's Amended Complaint named three (3) separate defendants: HRSA-ILA, Management and Bowers.   Based on the Defendants' responsive pleadings, _infra_, and the CBA and related documents, the Court construes the named defendants as follows.

### 1.   __HRSA-ILA__

Basnight named HRSA-ILA as a party defendant.   HRSA-ILA appears to be an entity jointly created by the Hampton Roads Shipping Association ("HRSA" or "Management") and the International Longshoremen's Association ("ILA" or the "Union"), to facilitate the administration of a number of funds created pursuant to the CBA.   The HRSA-ILA address listed by Basnight in his Amended Complaint is 1355 International Terminal Blvd., Norfolk, Virginia 23505-1458, which appears to be the same address as the Norfolk, Virginia location of the ILA.   One of these funds is the Hampton

---

"they" is or which of these actions is attributable to each of the named defendants. Basnight further stated, "I . . . would like to have these fraudulent acts [] corrected by management and labor [and the] ILA," and he further stated, "[t]his type of conduct involves bad faith, dishonesty and a lack of integrity."   __Id.__ Again, the complaints do not specify which of the named defendants committed these acts or what specific fraudulent acts were committed.

    The Court further notes that in the document entitled "Plaintiff's Evidentiary Facts," attached as Exhibit A to Basnight's Motion to Amend Plaintiff's (Response) Request for Counsel (Document No. 23), dated April 7, 2006, Basnight asserted that his "current of pay" should be $29.00 per hour, and Basnight further requests that he "be awarded 'punitive damages' . . . for 'pain and suffering' to be established and agreed upon by the parties."   Plaintiff's Evidentiary Facts, at 2.

Roads Shipping Association – International Longshoremen's Association Fringe Benefit Escrow Fund (the "Fund"), which appeared on behalf of the HRSA-ILA, by counsel, in the instant action.  The Court construes the Fund to be a proper party-defendant in the instant action.  See also infra Section IV.B.1.

## 2. Management

Basnight also named Management as a party defendant.  It appears that HRSA is synonymous with "Management" as used in the instant lawsuit.  The address for Management listed by Basnight in his Amended Complaint is 236 E. Plume Street, Norfolk, Virginia 23505-3487, which appears to be the same address as the HRSA.  HRSA appeared on behalf of Management, by counsel, in the present action, and the Court construes HRSA to be a proper party-defendant in the instant action.

## 3. John Bowers, President of the International Longshoremen's Association

Basnight also named John Bowers ("Bowers"), President of the International Longshoremen's Association ("ILA"), as a party defendant.  Basnight has not alleged any specific conduct or omissions by Bowers, or, for that matter, by the ILA that gave rise to the instant claim.  It appears to the Court from the record that Bowers was a co-chairman of the Industry Appellate Committee ("IAC"), discussed infra, which ultimately heard and denied Basnight's grievance as to his pay rate.  The Court construes Bowers to be a proper party-defendant in the instant action in his

role as a union representative.  <u>See also infra</u> Section IV.C.2.

## C. **Defendants' Responses**

On April 15, 2005, Defendants HRSA-ILA (through the Fund) and Management (through HRSA) (collectively, "the Management Defendants"), filed a Motion with Memorandum in Support for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 ("Management Defendants' Motion for Summary Judgment") (Document No. 9).[6]  That motion, brought on behalf of the Management Defendants individually and collectively, was based on three (3) separate grounds.  First, the Fund argued that it never employed Basnight and was never a party to the Collective Bargaining Agreement ("CBA"), and, therefore, the Fund argued it cannot be liable to Basnight on his claim that he is not receiving the correct pay rate under the CBA.  Second, the Management Defendants argued that the arbitration proceedings conducted by the Local Industry Grievance Committee ("LIGC") and the Industry Appellate Committee ("IAC"), discussed <u>infra</u>, denying Basnight's grievance claim, were final and binding on Basnight.  Third, the Management Defendants argued that Basnight's claim was barred by Virginia's ninety (90) day statute of limitations for vacation of arbitration awards.  Included with the Management Defendants' Motion for

---

[6]That motion included, in a footnote, the requisite notice, pursuant to Local Civil Rule 7(K) and <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), which advised Basnight that he had twenty (20) days in which to file a response to any dispositive motions.

Summary Judgment, in accordance with Rule 56 of the Federal Rules of Civil Procedure, the Management Defendants presented a number of statements of undisputed facts, various exhibits and documentary evidence, and affidavits from Mr. Roger Giesinger, Chairman of HRSA, and Mr. Lewis J. Cobb, Jr., Administrator of the Fund.

Basnight responded to the Management Defendants' Motion for Summary Judgment on April 25, 2005 by way of a pleading entitled: "Franklin Basnight: Due Motion for Dismissal of Summary Judgment of Said Defendant" (Document No. 10).  In that response, Basnight reasserted his request for court-appointed counsel;[7] however,

---

[7]The Court notes that on March 29, 2005, Basnight filed a motion seeking the appointment of counsel (Document No. 8), which the Court denied by Order entered May 10, 2005 (Document No. 16). On May 23, 2005, Basnight moved the Court to rescind its May 10, 2005 Order and requested an extension of time in which to obtain an attorney (Document No. 17).  That motion was opposed by the Management Defendants (Document No. 18).  On June 29, 2005, Basnight requested an additional extension of time to obtain an attorney, and he requested that the Court consider the motion as his response to Defendant Bowers's motion to dismiss (Document No. 19).  That motion was filed subject to defect as it did not contain a certificate of service, and it was opposed by the Management Defendants (Document No. 20).  On March 24, 2006, the Court entered an Order (Document No. 22), denying Basnight's motion to rescind and granting, in part, Basnight's request for an extension of time, "[w]ith the understanding that plaintiff intends to seek assistance of counsel," and allowing him thirty (30) days from the date of the order to file amended responses to Defendants' motions.  That Order also recognized Basnight's request that his motion be deemed a response to Defendant Bowers's motion to dismiss, but noted that "[Basnight] sets forth no substantive arguments [in his response]." On April 7, 2006, Basnight renewed his motion for appointment of counsel, which was opposed by the Management Defendants on April 20, 2006 (Document No. 24); that motion was filed by the Court on April 10, 2006.  The Court denied Basnight's motion by Order entered April 21, 2006 (Document No. 25).

Basnight did not provide further evidence or argument in support of his claim or directly address any of the proffered undisputed facts or other evidence provided by the Management Defendants.

On May 5, 2005, Defendant Bowers filed a Motion to Dismiss, or, in the alternative, for Summary Judgment ("Defendant Bowers's Motion") (Document No. 13), and supporting memorandum (Document No. 14).[8]  In that motion, Bowers adopted all the arguments set forth in the Management Defendants' Motion for Summary Judgment, infra, and included several additional grounds for dismissal.  First, Bowers asserted that he cannot be held individually liable for any acts he may have committed as President of the ILA.  To that end, Bowers further asserts that Basnight's complaint is defective because it is unclear whether Basnight is bringing a claim against Bowers in his role as President of the ILA, or against Bowers individually.  Bowers also asserts that the complaint is defective because it fails to state a claim against the ILA itself.  In support, Bowers asserts that the complaint does not specify any involvement that the ILA, or Bowers as an individual, had in Basnight's wage reduction.  Furthermore, Bowers argues that the ILA did not represent Basnight in his grievance proceedings or arbitration; rather, Local 1248 represented Basnight.  Bowers

---

[8]That motion also included, in a footnote, the requisite notice, pursuant to Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), which advised Basnight that he had twenty (20) days in which to file a response to any dispositive motions.

argues that, even if specific allegations had been made that Local 1248 improperly represented Basnight, the international union is not liable for the local union's deficient representation.  Local 1248 is not a named defendant in this lawsuit.

Basnight did not originally file a response to Defendant Bowers's motion, though the Court did consider, at Basnight's request, the pleading styled, "Motion to Rescind Court 'Order' Denial of Counsel Requesting Forty (40) Day Extension" (Document No. 17), as a response to Defendant Bowers's motion.  <u>See supra</u> note 7.  In addition, on April 7, 2006, Basnight submitted a pleading styled, "Motion to Amend Plaintiff's (Response) Request for Counsel" (Document No. 23) <u>see supra</u> note 7, which was filed by the Court on April 10, 2006 and which included a document entitled, "Plaintiff's Evidentiary Facts" (Exhibit A), a photocopy of an arbitrator's decision in an unrelated matter, dated May 30, 2000 (Exhibit B), and a letter from HRSA to Basnight, dated April 22, 1999 (Exhibit C).  To the extent that this amended response was timely filed within the Court's 30-day deadline set forth in the Court's Order of March 24, 2006 (Document No. 22), <u>see supra</u> note 7, the Court deems these documents as responsive to Defendant Bowers's motion, and, by implication, responsive to the Management Defendants' motion as well.

## II. <u>FACTUAL BACKGROUND</u>

### A. <u>Basnight's Allegations</u>

Basnight alleges that he was improperly denied the wage rate he was entitled to under the CBA between the Hampton Roads Shipping Association ("HRSA") and International Longshoremen's Association ("ILA"). (Amended Complaint at 2).[9] HRSA is a non-profit association of employer-members, and ILA and its affiliated Locals is a labor organization that acts as the collective bargaining representative for longshoremen working in the Port of Hampton Roads. HRSA, acting on behalf of its employer-members, and the ILA, including its affiliated Locals, are parties to, and signatories of the CBA. The Fund is not a party to the CBA, though it is an entity created pursuant to the terms of the CBA.

In the present action, Basnight alleged that he was hired by HRSA on April 22, 1999 and assigned a pay rate of $24.00 per hour based on his prior work history in the industry.[10] Basnight also

---

[9]The CBA, effective October 3, 1996, was extended by agreement of the parties from its expiration date of September 30, 2001 to September 30, 2004.

[10]The Court notes that Basnight's allegations appear to be predicated on a letter from HRSA to Basnight, dated April 22, 1999, in which HRSA informed Basnight he had been "assigned to freezer gang #86" and that he would not be "eligible for reassignment [from this gang] without the full agreement of both the management and labor representatives of the HRSA-ILA." See Motion to Amend Plaintiff's (Response) Request for Counsel (Document No. 23), Exhibit C ("April 22, 1999 letter"). The April 22, 1999 letter also confirmed that Basnight's pay rate was set at $24.00 per hour, "based on the attached [40 year] work history," which was dated April 15, 1999 and described Basnight's time credited towards the HRSA-ILA Pension Plan. Id. That work history confirms that Basnight had previously worked in the industry during 1978, 1979, 1998 and 1999.

alleged that on November 4, 2002, he was wrongfully classified as a "new employee,"[11] with a corresponding wage reduction from $27.00 per hour to $17.00 per hour.[12]   This was incorrect, Basnight alleged, because he had previously "worked in the [International Longshoremen's Association] industry in 1978, 1979 and again [from] 1998 to 1999," and therefore he should not have been subject to the reduced wages under the definition of a "new employee" agreed upon by "management and labor" and as stated in the CBA.[13]

In the instant action, Basnight has asserted a claim for a

---

[11]Basnight alleged that the term "new employee" was defined under a management-labor agreement and was explained in a letter from HRSA, dated August 17, 1988 ("August 17, 1988 letter").

[12]The Court assumes that by the time of this decision, Basnight's pay rate had increased to $27.00 per hour, see supra note 3.  The pay-rate reduction to $17.00 per hour is confirmed in a letter from HRSA to Basnight, dated January 24, 2003 ("January 24, 2003 letter), which refers to another letter from HRSA to Basnight, dated November 4, 2002 ("November 4, 2002 letter") informing Basnight that his pay rate was incorrect.

[13]The Court recognizes that the Management Defendants, HRSA and the Fund, deny that either ever employed Basnight or that either determined the rate of pay that Basnight received as a longshoreman.   The Management Defendants assert, instead that Basnight was employed by one of the employer-members of HRSA.
     The Court further notes that Basnight has not named any particular employer-member of HRSA as a party to this action, and he appears to maintain his assertion that HRSA was his employer, ostensibly because of the various correspondence he received from HRSA pertaining to terms and conditions of his employment.   See supra note 10.  In his Amended Complaint, however, Basnight does make reference to "the employer in the port of Hampton Roads [having] reduced my wages, from $27 [sic] an hour to $17 [sic] an hour," which suggests Basnight was referring to an employer-member of HRSA.   Further, Basnight does not appear to assert that his wages are paid by HRSA.

wage rate of $28.00 per hour and back pay for the time period during which his wages were reduced.[14]   To that end, Basnight alleges that he was wrongfully reclassified by HRSA, as a "new employee" with a resulting wage reduction from $27.00 per hour to $17.00 per hour.   On August 27, 2002, a ruling by the Industry Appellate Committee ("IAC") established a definition of "new employee," which purported to include Basnight.[15]   On November 4, 2002, Basnight received a letter from HRSA stating that according to an agreement reached between "management and labor" Basnight was to be reclassified as a "new employee"; the letter stated, "even if an individual had prior hours in the industry, if he/she did not have at least one (1) hour during the contract period October 1,

---

[14]The Court assumes that $28.00 per hour is what Basnight asserts his rate of pay should have been at the time he filed the instant lawsuit, on or about December 30, 2004.   See also supra note 3.

[15]Basnight complains that this ruling was counter to a previous ruling by the IAC, from April 7, 1998, in which the IAC was presented, on appeal, a decision by the Local Industry Grievance Committee ("LIGC") of January 14, 1998 interpreting the definition of "new employee" to include those longshoremen entering the industry after October 1, 1996.   This definition could not have included him, Basnight argues, because he had previously worked in the industry in 1978 and 1979.   Basnight further asserts that the LIGC's interpretation of "new employee" meant an employee entering the workforce after October 1, 1996, who had worked 100 hours in the previous contract year.   According to Basnight, the IAC, in its April 7, 1998 decision, decided that the 100-hour requirement would not be applied.   On the basis of this decision, Basnight asserts that in March 1999 "[HRSA] finally agree to pay me the higher rate of pay, which was from $13 [sic] an hour[, his pay rate when he began working in the Port of Hampton Roads 1998,] to $27 [sic] an hour[, the pay rate he was allegedly entitled to receive in 1998, based on his work history in the industry],' and all back pay."

1990 to September 30, 1996 such individual shall be deemed to be a new employee and subject to the lower rate of pay." According to Basnight's account of his employment history in his Amended Complaint, while he first worked as a longshoreman in 1978, and again in 1979 and 1998, he did not work in the industry at all between the years 1990 and 1996. In January 2003, subsequent to issuance of the revised "new employee" definition, Basnight's wages were reduced from $27.00 per hour to $17.00 per hour. Basnight asserts that his reclassification as a "new employee" resulted from "fraudulent acts . . . bad faith, dishonesty and a lack of integrity," which he does not specify with any particularity, and he now requests "correct wages which is $28.00 per hour and back pay,"[16] from the January 2003 date of the change to his rate of pay. Basnight further seeks ten (10) million dollars for "serious mental distress", "mental anguish", and "other losses . . . such as, two (2) retail clothing businesses, a lot of personal diamonds and jewelry, and three (3) vehicles."

## B.  Collective Bargaining Agreement

The CBA is composed primarily of two parts, a Master Contract

---

[16]Basnight defined the "back compensation" he is allegedly due to "include all straight time, overtime and meal hours that resulted [from] his rate of pay being decreased." Plaintiff's Evidentiary Facts, at 2. Also, Basnight requested reinstatement of "his container royalty or other applicable benefits" to the extent that such benefits are affected by his change of pay rate, and he asserted a claim for "punitive damages . . . for [his] 'pain and suffering.'" Id.

that applies in ports from Maine to Texas, including the Port of Hampton Roads, and a Local Contract that supplements the Master Contract and applies only in the Port of Hampton Roads.  A copy of the CBA was attached as Exhibit A to the Management Defendants' Motion for Summary Judgment.  HRSA, a non-profit association of employers, and ILA and its affiliated Locals are parties to the CBA.  The Fund is not a party to the CBA.  Basnight, like all longshoremen, is represented by the ILA and is a member of ILA Local 1248.  Section 15 of the Master Contract provides for a joint management-labor committee, the LIGC, whose purpose is to administer and interpret the CBA Master Contract and resolve disputes.  All disputes arising under the CBA Master Contract must be brought before the LIGC.  If the LIGC fails to render a decision, or a party wishes to appeal a decision of the  LIGC, a case may be taken before another joint management labor committee, the IAC.  Pursuant to Section 15 of the CBA Master Contract, decisions by the IAC are final and binding.

## C.  <u>Proceedings Before the LIGC and the IAC</u>

Basnight alleges that in January 2003 his rate of pay was decreased from $27.00 per hour to $17.00 per hour, as a result of his classification as a "new employee," pursuant to an August 27, 2002 ruling by the IAC, which defined "new employee" as an individual who had not worked at least one hour during the contract period October 1, 1990 to September 30, 1996.  Pursuant to Section

14

15 of the CBA Master Contract, on February 5, 2003, ILA Local 1248 filed a grievance with the LIGC on Basnight's behalf against the HRSA.[17]  The LIGC ruled against Basnight's petition to increase his rate of pay.  Through ILA Local 1248, Basnight appealed the LIGC's ruling to the IAC, which remanded to the LIGC.  On November 17, 2003, the LIGC again ruled against Basnight, who again appealed to the IAC through ILA Local 1248.  On September 24, 2004 the IAC affirmed the LIGC's ruling against Basnight.  The IAC mailed a letter, dated September 24, 2004, addressed to ILA-Local 1248 and copied to HRSA, advising of its decision.  This letter was received by HRSA on September 29, 2004 and is attached as Exhibit H to the Management Defendants' Motion for Summary Judgment.  Basnight filed the instant complaint in this court on January 7, 2005.

### III. <u>STANDARDS FOR REVIEW</u>

### A. <u>Motion for Summary Judgment Standard</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-

---

[17]The Court notes that this grievance was brought on behalf of eight (8) employees, including Basnight, who were aggrieved by the IAC's definition of "new employee" and whose pay rates were subsequently affected by that decision.  <u>See</u> Management Defendant's Motion for Summary Judgment, Exhibit D.

moving party." <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. <u>Id.</u>

In deciding a summary judgment motion, the court must view the record as a whole and in the light most favorable to the non-moving party. <u>Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.</u>, 763 F.2d 604, 610 (4th Cir. 1985). "If, however, 'the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor." <u>O'Connor v. Consol. Coin Caterers Corp.</u>, 56 F.3d 542, 545 (4th Cir. 1995) (quoting <u>Anderson</u>, 477 U.S. at 251-52). Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," <u>Celotex</u>, 477 U.S. at 322, as the non-moving party is required to "set forth specific facts showing that there is a genuine issue for trial" with respect to that element. Fed. R. Civ. P. 56(e).

### B. <u>Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted</u>

Federal Rule of Civil Procedure 12(b)(6) allows a court to

dismiss an action if the complaint fails to state a claim upon which relief can be granted.  See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept the facts pleaded by the plaintiff as true and must construe them in the light most favorable to the plaintiff. Id.; see also Martin Marietta Corp. v. Int'l. Telecomms. Satellite Org., 991 F.2d 94 (4th Cir. 1992).  The claim should not be dismissed unless it appears to a certainty that the plaintiff can prove no facts in support of its claims which would entitle it to relief.  See Mylan Labs., Inc., 7 F.3d at 1134; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996).

In ruling on a Rule 12(b)(6) motion, the court can rely upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference.  See Simmons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985), cert. denied, 474 U.S. 1054 (1986).  See also Clark v. BASF Salaried Employees' Pension Plan, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004) (citing Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994), recognizing that the "district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment"), affirmed as modified by Clark v. BASF Corp., 142 Fed. App'x 659, 661 (4th Cir. 2005)

(also recognizing that district court properly considered pension plan document, which was not part of the public record, without converting the motion to dismiss into a motion for summary judgment, where there was no dispute as to document's authenticity, the document was referenced in the complaint and the document was central to the plaintiff's claim); Gasner v. County of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) (court may consider documents outside the pleadings, without converting motion to dismiss into a motion for summary judgment, to include "documents quoted, relied upon, or incorporated by reference in the complaint, [as well as] official public records pertinent to the plaintiff's claims," so long as the documents are "of unquestioned authenticity").

With these controlling principles in mind, the Court turns to the merits of the various motions.

## IV. **MERITS**

### A.   **Basnight's Cause of Action**

Basnight has not artfully pled a specific cause of action. The Court notes that Basnight is acting pro se and recognizes a need to be solicitous of a pro se plaintiff's position.  However, the "district court is not required to act as an advocate for a pro se litigant." Gordon v. Leeke, 574 F.2d 1147, 1151-52 (4th Cir. 1978).  Based on the nature of the allegations, the Court construes Basnight's claim against the Management Defendants as one for breach of the CBA under Section 301 of the Labor Management

Relations Act of 1974 ("LMRA" or the "Taft-Hartley Act"), 29 U.S.C. § 185.  See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983) (characterizing a union member's "suit against the employer [as resting] on § 301 [of the LMRA], since the employee is alleging a breach of the collective bargaining agreement"); see also Int'l Longshoremen's Ass'n v. Virginia Int'l Terminals, 938 F. Supp. 335, 336 (E.D. Va. 1996) (same).  The Management Defendants in the present action appear to concur that Basnight is likely attempting to assert a § 301 claim against them, though the Court recognizes that the Management Defendants contest their characterization as Basnight's "employer."  However, the statutory definition of "employer," as included in the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169, as amended by the LMRA, includes "any person acting as an agent of an employer, directly or indirectly, . . . or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization," 29 U.S.C. § 152(2), which most certainly includes the named defendants in this action.

The Court further construes Basnight's claim against the union as one for breach of the union's duty of fair representation, arising under the NLRA.  See DelCostello, 462 U.S. at 165 (duty of fair representation is implied under the NLRA).  See also Int'l Longshoremen's Ass'n, 938 F. Supp. at 336-37 (characterizing a claim raised against an officer of the union as one for breach of

fiduciary duty owed by the union under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a)).  A cause of action for breach of the union's duty of fair representation arises "when the union representing the employee acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach [that] duty." DelCostello, 462 U.S. at 164. See also, Int'l Longshoremen's Ass'n, 938 F. Supp. at 338-39 (characterizing the complaint against a union official as comprising allegations that the official "fail[ed] to properly and in good faith represent the interests of the Locals in the contract negotiations with the Employer Defendants").  In amending his complaint to include Defendant Bowers, Basnight has ostensibly created such a cause of action, though, as Bowers has correctly stated in his motion, Basnight fails to allege what specific fraudulent or dishonest acts were committed by Bowers and/or the union.[18]

_____

[18]The Court notes that Basnight also appears to allege that his reduction in pay was a result of "unfair treatment he received after entering the ILA workforce (industry)" and that he has been subjected to certain "differential treatment" that resulted in the deprivation of certain rights as an employee.  See generally, Plaintiff's Evidentiary Facts.  To that end, Basnight appears to allege that he first worked in the industry in 1978-79, and then again in 1998, see supra note 10, after he was "hired as a 'scab' or non-union worker" because he had been denied employment as a union worker.  Plaintiff's Evidentiary Facts, at 2.  Basnight asserts that he "was finally allowed to join the union in 1999," and that he "was given the top rate of pay and allowed benefits" based on his forty-year ILA work record.  Id.; see also supra note 10.  Basnight then appears to assert that when his pay was reduced under the revised definition of "new employee," see supra notes 11,

With the inclusion of the Management Defendants, as representatives of the employer, and Bowers, as a union representative, the Court further construes Basnight's claim to constitute a "hybrid § 301/fair representation" action. DelCostello, 462 U.S. at 165; Int'l Longshoremen's Ass'n, 938 F. Supp. at 336.  Such an action:

> comprises two causes of action.  The suit against the employer rests on § 301, since the employee is alleging a breach of the collective-bargaining agreement.  The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the [NLRA].  Yet the two claims are inextricably interdependent.

DelCostello, 462 U.S. at 164 (citations omitted) (emphasis added). In addressing such a claim, this Court has previously stated "the claim against an employer for breach of a CBA stems from a breach

---

15, he was treated differently than those employees who remained union members during that entire period and who were determined to have been "grandfathered" and thus exempt from the import of that definition.  Plaintiff's Evidentiary Facts, at 2.  Basnight does not, however, state which of the instant defendants was responsible for the alleged "differential treatment," and he does not offer any reasons for that treatment apart from the aforementioned union/non-union distinction.  See Ash v. United Parcel Serv., Inc., 800 F.2d 409 (4th Cir. 1986) (rejecting plaintiff's "allegation of differential treatment" based on mere "inference that Ash was treated more severely because of prior disputes with the union [as] unsupported speculation").

    To substantiate this claim, Basnight also appears to suggest that the Court obtain "subpoenaed work records and pay records from various waterfront employers for Hugh Britt and Melvin Evans," whom Basnight asserts were treated differently than he was in such matters.  The Court cannot undertake such a request, and offers no opinion here as to the efficacy of this claim.

of the duty of fair representation owed to the plaintiff by the union or union official [acting in his official capacity]." Int'l Longshoremen's Ass'n, 938 F. Supp. at 336 (emphasis added). Accordingly, "[i]n a hybrid § 301 case, a [p]laintiff has a viable claim against an employer if he can show breach of a duty owed by [the] union." Id. at 339.   It follows, therefore, that an "'indispensable predicate' of a § 301 action in a hybrid case against an employer is a meritorious fair representation claim against the union," such that "the inability of the plaintiff to prove a breach by the union requires the dismissal of both claims." Id. at 338 (citing United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 62 (1981)).[19]

Despite the "inextricably interdependent" nature of the two causes of action in a hybrid § 301 claim, DelCostello, 462 U.S. at 164, the Supreme Court has repeatedly held that a plaintiff need not sue both parties to state a valid claim, id. at 165.

_____

[19]The Supreme Court was careful to distinguish its holding in DelCostello from its prior holdings in Mitchell, 451 U.S. 56 (applying the state statute of limitations for vacation of an arbitration award), which the Court noted was similar to the suit at issue in DelCostello, but expressly did not present the issue of application of a federal statute of limitations because only the employer sought certiorari in Mitchell.  DelCostello, 462 U.S. at 154-55.  Similarly, the Court distinguished DelCostello from Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696 (1966) (applying the state statute of limitations for actions on unwritten contracts), which the Court characterized as a "straightforward breach-of-contract suit under § 301" because in Hoosier there was no binding agreement to submit grievances to arbitration and because the suit was brought by the union as opposed to an individual employee.  DelCostello, 462 U.S. at 163, 165.

> The plaintiff 'may, if he chooses, sue one
> defendant and not the other.' . . . The key
> factor in a hybrid § 301 suit is not who the
> plaintiff chooses to sue, or which parties
> appear before the court, but rather what the
> plaintiff must prove in order to recover.  The
> plaintiff's burden remains constant, whether
> suit is brought against the employer, the
> union, or both. . . . Although the plaintiff
> can sue only the employer, in order to show a
> breach by the employer of the collective
> bargaining agreement in a hybrid § 301 suit,
> he must nevertheless 'also carry the burden of
> demonstrating breach of duty by the Union.'

Int'l Longshoremen's Ass'n, 938 F. Supp. at 338 (citing

DelCostello, 462 U.S. at 165) (internal citations omitted).

Based on the foregoing, the Court has determined that Basnight

has attempted to assert a hybrid § 301 / fair representation claim

in this action, and that his ability to maintain such a claim

against the Management Defendants rises and falls with his ability

to state a meritorious claim against Bowers, in his official

capacity as a representative of the union, for breach of duty of

fair representation.

### B.  **Management Defendants' Defenses**

The Court will now consider each of the three grounds for

summary judgment asserted by the Management Defendants.

### 1. **The Fund is a Proper Party-Defendant to this Action**

The Management Defendants first assert, on behalf of the Fund,

that the Fund is not properly before the Court because the Fund was

never Basnight's employer and was never a party to the CBA in the

first instance, and therefore cannot be liable to Basnight for

allegations that his pay rate was improperly set under the CBA. The Fund provides no authority to support such an assertion. The Court recognizes that Basnight's complaint simply named "HRSA-ILA" as a party-defendant, yet the Fund chose to enter an appearance in this action on behalf of the HRSA-ILA. The Management Defendants assert that the Fund was created "for the purpose of receiving and administering contributions of the HRSA employer-members necessary to fund fringe benefit programs for Longshoremen" and to "act as a payroll administrator for the payment of wages by some of the HRSA employer-members to the Longshoremen." Management Defendants' Motion for Summary Judgment, Exhibit 2. The Fund further asserts that it does not: "employ Plaintiff[,] . . . is not a party to the [CBA,] . . . set or pay compensation provided to any Longshoremen[,] . . . [or] hire or fire any Longshoremen." Id. Nevertheless, under the broad definition of "employer" as established by the NLRA, see supra Section IV.A., the Fund certainly appears to act as the agent for one or more of the employer-members. NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 511 (1979) (the National Labor Relations Act, 29 U.S.C. § 152(2), includes all employers not within the express exceptions to the statutory definition of "employer" as ". . . any person acting as an agent of an employer, directly or indirectly").

Based on the foregoing, the Court FINDS that the Fund is a proper party to this action. Accordingly, the Court recommends

24

that the Management Defendants' Motion for Summary Judgment be
DENIED on this ground.

### 2. The IAC's Decision is Final and Binding, but Does Not Foreclose Judicial Review

The Management Defendants next assert that the decision of the
IAC, which ruled against Basnight in his grievance addressing his
rate of pay, was tantamount to an arbitration proceeding that is
considered final and binding under the terms of the CBA.  As stated
supra, pursuant to Section 15 of the CBA Master Contract, decisions
by the IAC are final and binding.  However, this does not end the
inquiry.   The Supreme Court has stated that if, under the
collective bargaining agreement, the arbitration is considered
final and binding, the employee generally will be held to this
standard. DelCostello, 462 U.S. at 165 (recognizing that under the
collective-bargaining agreement at issue, the regional joint union-
management committee's decision was final and binding on all
parties). "Subject to very limited judicial review, [the employee]
will be bound by the result [of the arbitration] according to the
finality of provision of the agreement." Id.; see also Ash v.
United Parcel Serv., Inc., 800 F.2d 409, 411 (4th Cir. 1986) ("The
resolution of a grievance under a contractually established scheme
is ordinarily final and binding on the parties") (citing Hardee v.
N.C. Allstate Servs., Inc., 537 F.2d 1255, 1258 (4th Cir. 1976)
("Where a collective bargaining agreement provides procedures by
which disputes are to be resolved, then the decision reached under

these procedures is generally final and binding on the parties and will not be disturbed by the courts.")).

By creating this limited opportunity for judicial review, the Supreme Court has preserved the employee's ability to challenge the results of the arbitration proceedings, albeit on limited grounds. The courts recognize such challenges in the form of a hybrid § 301/fair representation claim, see supra, in which the employee can assert that "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." DelCostello, 462 U.S. at 165. "In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." Id. (citing Vaca v. Sipes, 386 U.S. 171 (1967)) (other citations omitted) (emphasis added).[20]

In attempting to define what constitutes a breach of duty of fair representation, the courts have stated that "[s]imple

---

[20]In Vaca, the Supreme Court specifically limited the judicial-review exception to the circumstance where the union was representing the employee in the grievance/arbitration procedure. DelCostello, 462 U.S. at 164 (citing Vaca, 386 U.S. at 164). In the instant case, Defendant Bowers asserts that the ILA is immune from suit because the Local 1248 raised the grievance claims on Basnight's behalf, not the international union. The Court does not construe the Supreme Court's use of the word "union" in Vaca so narrowly as to suggest that a hybrid § 301 / fair representation claim may only be brought against an international union if the international union, as opposed to the local union, is the entity presenting the claim to the grievance committee on behalf of the employee. See infra notes 26, 27.

negligence, ineffectiveness or poor judgement in that representation is not sufficient to establish a breach of the duty." See, e.g., Ash, 800 F.2d at 411 (4th Cir. 1986) (citing Harris v. Schwerman Trucking Co., 668 F.2d 1204, 1206-07 (11th Cir. 1982)). "Rather, the union's conduct must be 'grossly deficient' or in reckless disregard of the member's rights." Id. (citing Wyatt v. Interstate & Ocean Trans. Co., 623 F.2d 888, 891 (4th Cir. 1980)). In Ash, the Fourth Circuit granted summary judgment for the defendants and dismissed the plaintiff's claim for failure to create a triable issue of fact.   Ash, 800 F.2d at 412. Nevertheless, that court's insights are particularly useful in identifying what might constitute a valid breach of duty of representation claim against a union:[21]

> In order to overturn the committee's decision, Ash must establish that the union handled his grievance perfunctorily or in bad faith and that 'there is substantial reason to believe that a union breach of duty contributed to an erroneous outcome in the contractual

---

[21]The Court notes that in Ash the plaintiff, Ernest Ash ("Ash"), named both the local and the international unions as defendants, and that he specifically complained that his local union representative, Franklin Baxter ("Baxter"), who was not named as a defendant individually, improperly represented his interests before a grievance committee. Ash, 800 F.2d at 410-11. The Fourth Circuit's analysis of that claim, discussed infra, necessarily dealt with the efficacy of Baxter's representation of Ash during the grievance proceedings. Id. at 411-12. This is not to suggest that the standard set forth in Ash for a breach of duty of fair representation claim applies only to the situation where the Local union is a party-defendant; nor does it suggest that the international union cannot be held to the same standard of representation.

proceedings.' . . . Although there is reason
to suspect some union hostility towards Ash,
there is no evidence that Baxter shared this
alleged ill-will.  Even if Baxter did feel
hostility toward Ash, there is no evidence
that animosity affected his representation of
Ash. . . . Baxter's performance was not
perfect, but a flawless performance is not
required to fulfill the union's duty.
. . .
In closing, we note that in order to proceed
to trial, the evidence and inferences
therefrom must create a 'real factual' dispute
about gross deficiencies in union conduct. . .
. Ash has raised at most an inference of
negligent representation [by the union during
the grievance proceedings].  He has failed to
present any facts indicating that [his]
discharge was in fact erroneous or that it was
upheld [during the grievance proceedings] at
least in part because of the union's allegedly
poor performance. . . . When the evidence does
not tend to establish the severely deficient
union conduct required for a breach of duty of
fair representation, summary judgment is
appropriate.

Ash, 800 F.2d at 411 (citations omitted).  See also, Byrd v.

Bakery, Confectionery and Tobacco Workers Int'l Union, 2000 WL

1456286, *2 (M.D.N.C.) (dismissing pro se employee's complaint

against international union, pursuant to Fed. R. Civ. P. 12(b)(6),

for failure to allege facts sufficient to satisfy either "part[] of

the test for a claim for breach of the duty of fair

representation").  In Byrd, the district court noted that the pro

se plaintiff failed to even allege the existence of a collective

bargaining agreement, the way in which that agreement was violated,

or any damages resulting therefrom, and the plaintiff further

failed to offer "evidence of any arbitrary, discriminatory, or bad

faith representation by the Union."  Id.

In the instant case, the CBA at issue established the arbitration proceedings as final and binding on the parties. Basnight has attempted to establish a hybrid § 301 claim against the union, through Defendant Bowers, which, if deemed meritorious, would preserve his ability to maintain the instant action against the Management Defendants, notwithstanding the finality provisions of the CBA.  See supra Section.IV.A.  Basnight's Amended Complaint refers to the "lawsuit against the defendants," stating, "[t]his type of conduct involves bad faith, dishonesty and lack of integrity."  Basnight fails to assert what specific conduct, actions, or omissions the union took or failed to take that would amount to improper representation of Basnight's interests; his Amended Complaint, for example, complains that "they" acted against his interests in reducing his compensation in violation of the terms of the CBA, but he does not specify to whom "they" refers. Unlike the pro se plaintiff in Byrd, however, Basnight has alleged with great specificity his grievances, how those grievances arose and to what extent he has been harmed as a result.  What Basnight has failed to do is allege with any particularity what commissions or omissions by the union gave rise to his complaint.

In sum, Basnight's Amended Complaint, in its present state, fails to state a meritorious cause of action against the union for breach of duty of fair representation, see infra Section IV.C.3.,

so as to maintain the instant hybrid § 301 claim.   Based on the record before the Court, the Court is dubious of Basnight's ability to maintain such an action, yet the Court has determined that Basnight should be allowed the opportunity to amend his complaint in an attempt to do so based on the standards discussed in <u>Ash</u> and <u>Byrd</u>, <u>supra</u>.  "Despite the liberal construction afforded pro se plaintiffs, the courts will not re-write complaints. <u>Byrd</u>, 2000 WL 1456286, *2 (citing <u>Peterson v. Atlanta Hous. Auth.</u>, 998 F.2d 904, 912 (11th Cir. 1993)).

Based on the foregoing, the Court FINDS that though the arbitration proceeding was final and binding as to Basnight pursuant to the CBA, Basnight is not foreclosed from obtaining judicial review of his claim, if properly asserted as a hybrid § 301 / fair representation claim.  Accordingly, the Court recommends that the Management Defendant's motion for summary judgment on this ground be DENIED.

### 3. Basnight's Complaint was Timely Filed as a Matter of Law

The Management Defendants next argue that Basnight's claim should be dismissed as time-barred because he filed the instant action outside the applicable statute of limitations. Specifically, the Management Defendants argue because the LMRA does not contain its own statute-of-limitations provision, actions under the LMRA are governed by the analogous state statute of limitations period.  In support, the Management Defendants cite <u>DelCostello v.</u>

Int'l Bhd. of Teamsters, 462 U.S. 151, 159 (1983), supra, and argue that Basnight's claim is equivalent to an action to vacate an arbitration award, and, therefore, Virginia's statute of limitations governing vacations of arbitration awards should apply.[22]

The Management Defendants misstate and/or misinterpret the holding of DelCostello, as applied here.  In DelCostello, the Supreme Court reaffirmed the general proposition that "when there is no federal statute of limitations expressly applicable" to a particular case, "our task is to 'borrow' the most suitable statute or other rule of timeliness from some other source." DelCostello,

---

[22]Under Virginia's Uniform Arbitration Act, Va. Code Ann. § 8.01-581.010, application to a court to vacate an arbitration award must be made within ninety (90) days.  A ninety (90) day statute of limitations would bar Basnight's claim as untimely filed.

The IAC mailed notice of its decision to deny Basnight's final grievance on September 24, 2004, which was a Friday.  That notice was mailed to the ILA-Local 1248, who represented Basnight during the grievance procedures, with a copy to the HRSA.  The date of receipt of notice by Basnight is not known, but HRSA received the notice on September 29, 2004.  However, Basnight has not contested the allegation that he properly received the notice within the three-days-from-date-of-mailing presumed by law.  See Williams v. Enter. Leasing Co., 911 F. Supp. 988, 991 (E.D. Va. 1995) (citing Fed. R. Civ. P. 6(e)).  Assuming without deciding that Basnight received the notice no later than September 29, 2004, his complaint would have been due ninety (90) days later, on December 28, 2004, under Virginia's ninety-day statute of limitations, supra. Basnight's original complaint and IFP application were dated December 30, 2004, though the Court's file indicates that the complaint was not filed until the Court's Order of January 7, 2005 (Document No. 2).  Even assuming that Order accorded Basnight the December 30, 2004 filing date, his complaint would have been untimely as a matter of law since it was received more than ninety (90) days after receipt of that notice.

462 U.S. at 158.   The Supreme Court also stated, "[w]e have generally concluded that Congress intended that the [federal] courts apply the most closely analogous statute of limitations under state law."   Id.   Nevertheless, in DelCostello the Court expressly stated that "resort to state law might have to be tolerated if state law were the only source reasonably available for borrowing as it often is," but clearly expressed its preference to adopt a "federal statute of limitations" if one is available. Id. at 169.   Specifically, in the case of a hybrid § 301 claim, the Court held that it was more appropriate to look to Section 10(b) of the NLRA, which establishes a six-month statute of limitations for an employee to make claims of unfair labor practices to the National Labor Relations Board ("NLRB").   Id. (Section 10(b) of the NLRA, 29 U.S.C. § 160(b), applies to suits brought against unions and employers).   In DelCostello, therefore, the Supreme Court held that when an employee brings suit against both a union and an employer the federal statute of limitations applies.   "We conclude that state limitations periods for vacating arbitration awards fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under § 301 and the fair representation doctrine."[23]   Id. at 166.   See also supra note 19.

_____

[23]In DelCostello the plaintiff filed suit against his employer and the union alleging that his employer had discharged him in violation of the collective-bargaining agreement and that the union had represented him in a discriminatory, arbitrary and perfunctory manner which violated the union's duty of fair representation.

The Management Defendants also cite <u>Brown v. United Parcel Serv.</u>, 560 F. Supp. 146, 149 (E.D. Va. 1982), for the proposition that the Virginia statute of limitations for the vacation of arbitration awards is applicable here. In <u>Brown</u>, however, the employee brought the action against his former employer for breach of the collective bargaining agreement. <u>Id.</u> at 147. Accordingly, while that action was construed as arising under § 301 of the Labor Management Relations Act, <u>id.</u> at 149, it was not a hybrid § 301 action because the employee did not allege breach of the duty of representation by the union. <u>See Auto Workers v. Hoosier Cardinal Corp.</u>, 383 U.S. 696 (1966) (applying the state statute of limitations for breach-of-contract suit under section 301 of the Labor Management Relations Act where the suit was brought by the union, as opposed to against the union); <u>see also</u> <u>supra</u> note 19.. Therefore, the Court finds that <u>Brown</u> is not relevant to the statute of limitations for a hybrid action, and cannot be used to show that the Virginia statute of limitations is appropriate in the instant case.

Following <u>DelCostello</u>, therefore, this Court has determined that the six-month statute of limitations established by Section 10(b) of the NLRA applies to the instant actions filed against the

---

<u>DelCostello</u>, 462 U.S. at 166. Though it is unclear whether Basnight can sustain a cause of action against the union for breach of duty of fair representation, <u>see infra</u> Section IV.C.3., under <u>DelCostello</u>, Basnight had a six-month statute of limitations in which to do so.

Management Defendants, as agents of Basnight's employer(s), and against Defendant Bowers, as a representative of the union. Assuming Basnight received notice giving rise to the aggrieved action on September 29, 2004, see supra note 22, his lawsuit must have been filed in this Court within six (6) months thereafter, on or before March 28, 2005. Basnight initiated the instant action on or about December 30, 2004, see supra note 22, with almost three (3) months remaining on the six-month statute of limitations.[24] Accordingly, the Court FINDS that Basnight's claim was timely flied, and the Court recommends that the Management Defendant's motion for summary judgment on this ground be DENIED.

Based on the foregoing, the Court recommends that the Management Defendants' Motion for Summary Judgment be DENIED on all grounds.

## C. Defendant Bowers's Defenses

The Court will now consider each of the three grounds for dismissal, or alternatively summary judgment, raised by Defendant Bowers.

### 1.  Assertion of Management Defendant's Defenses

Bowers first expressly adopts all the arguments set forth in

---

[24]The Court notes that insofar as the instant report and recommendation recommends dismissal of Basnight's Amended Complaint, without prejudice as to his right to file an amended pleading that states a meritorious hybrid § 301 claim, see infra Section IV.C.3., and without considering any tolling provisions, Basnight must do so within the time remaining on the six-month statute of limitations.

the Management Defendants' Motion for Summary Judgment and includes several additional grounds for dismissal.  Each of those defenses have been addressed in Section III.B. of this report and recommendation,[25] <u>supra</u>, and the same findings and conclusions in response thereto are equally applicable to Bowers's assertions.

### 2. **Bowers is Clearly Being Sued in his Official Capacity as a Union Officer, as Opposed to in his Individual Capacity**

Bowers next argues that Basnight's complaint is defective because, as a union officer, Bowers cannot be held individually liable for any alleged misconduct by the union, and because it is unclear whether Basnight brings his claim against Bowers individually or against the ILA.  First, the Court accepts, for the limited purpose of deciding the instant motion, Bowers's assertion that a union officer may generally not be held individually liable for conduct by the union or performed on behalf of the union.  <u>See</u>, <u>e.g.</u>, <u>Central Operating Co. v. Utility Workers of Am.</u>, 491 F.2d 245, 253 (4th Cir. 1974).  However, Bowers also asserts that such suits against union officials "within a private entity are unnecessary and [that] binding precedent grants immunity to the individual union defendants in that situation." Defendant Bowers's Motion for Summary Judgment, at 6.  This argument is not

_____

[25]The Court is mindful that Bowers appears to lack standing to assert the first of the Management Defendants' defenses, namely, that the Fund is not a proper party-defendant to this action. Nevertheless, the Court has rejected this argument in the instant report and recommendation, <u>see supra</u> Section III.B.2., and expresses no further opinion as to this portion of Bowers's motion.

persuasive.[26]

This Court has previously recognized that naming an officer of the union as a defendant in a hybrid § 301 / fair representation action is properly construed as having named the union as a defendant.  See, e.g., Int'l Longshoremen's Ass'n, 938 F. Supp. at 336 (claim brought by a local union on behalf of an employee against the "employer defendants," including HRSA, under Section 301 of the LMRA, 29 U.S.C. § 185, and against a vice president of the ILA, under Section 501 of the LMRDA, 29 U.S.C. § 501(a), constituted a hybrid § 301 / fair representation action).  As stated supra, the hallmark of a hybrid § 301 claim is a meritorious claim against the union, and it is of no moment whether the named defendant is an officer of the union or the union itself.  Int'l Longshoremen's Ass'n, 938 F. Supp. at 336 (in a hybrid § 301 / fair representation action, the claim arises "from a breach of the duty of fair representation owed to the plaintiff by the union or union official").  Though Basnight has failed to allege specifically what Bowers or the union did or failed to do that gives rise to his

---

[26]Defendant also asserts that "it is settled law that an international union is not liable for the action of its affiliated local unions." Defendant Bowers's Motion for Summary Judgment at 9 (citing Carbon Fuel Co. v. United Mine Workers of Am., 444 U.S. 212 (1979)). In fact, Carbon Fuel makes clear that an international union can be held responsible for the acts of its locals, for example, according to "the common-law doctrine of respondeat superior" whenever the local acts as agent for the international union. 444 U.S. at 216-17. The existence of an agency relationship is determined according to common-law principles.  Id.

instant claim, it is clear to the Court that Basnight intended to name Bowers in his role as a union representative, as opposed to seeking to hold Bowers individually liable for any damages to Basnight.

Based on the foregoing, the Court FINDS that to the extent Basnight has attempted to plead a hybrid § 301 claim against the union, Basnight has filed the instant action against Bowers in his role as a union representative, and not in his individual capacity. Accordingly, the Court recommends that the Defendant Bowers's motion to dismiss on this ground be DENIED.

### 3. Basnight's Amended Complaint Fails to Specifically State What Actions by the ILA or Bowers Resulted in Basnight's Wage Reduction to Support a Hybrid § 301 Claim

Bowers then argues that this Court should dismiss Basnight's claim because it fails to state specifically what involvement either the ILA, or Bowers as an individual had in Basnight's wage reduction.  Bowers points out that the Amended Complaint makes scant reference to the ILA, and that Basnight does not mention Bowers at all, other than adding him as a named party-defendant. In the Amended Complaint, for example, Basnight mentions the ILA only in connection with the industry in which he worked and in the limited context where he alleges that "both management and labor agreed" with a decision by the Industry Appellate Committee ("IAC"), by which Basnight feels aggrieved.  It appears from the context of Basnight's pleadings that the term "labor" is meant to

be synonymous with the ILA; just as the term "management" is synonymous with HRSA.  Basnight refers to the "lawsuit against the defendants," and characterizes the Defendants' conduct as involving "bad faith, dishonesty and a lack of integrity."  Bowers correctly asserts, however, that Basnight describes no specific act or omission by the ILA or Bowers that would constitute bad faith or dishonesty.[27]  Bowers sets forth precedent establishing that to avoid a motion to dismiss a complainant must adequately support his claim, and that conclusory language will not withstand a motion to dismiss.  See, e.g., Fischer v. Viacom Int'l, Inc., 115 F. Supp. 2d 535, 544 n.6 (4th Cir. 2000).  Also, claims of fraud or mistake must be stated with particularity.  Fed. R. Civ. P. 9(b).

Considering that Basnight has not alleged any specific conduct that involves bad faith or dishonesty, the Court FINDS that Basnight's Amended Complaint fails to state a claim upon which relief can be granted against Defendant Bowers.  Accordingly, the Court recommends that Bowers's motion to dismiss on this ground be GRANTED, in part, and the Court further recommends that Basnight's Amended Complaint be DISMISSED WITHOUT PREJUDICE to his rights to

---

[27]Furthermore, Bowers argues that the ILA did not represent Basnight in his grievance proceedings or arbitration, rather Local 1248 represented Basnight.  Bowers argues that, even if specific allegations had been made that Local 1248 improperly represented him, the international union is not liable for the local union's deficient representation.  Local 1248 is not a named defendant in this lawsuit.  This argument is not persuasive.  See supra, note 26.

file an amended pleading providing Basnight the opportunity to allege specific grounds for fraud and or other misconduct by the Defendants in his attempt to set forth a hybrid § 301 / fair representation claim.  See supra, Section IV.C.3.; see also Dunn v. Borta, 369 F.3d 421, 424 (4th Cir. 2004).

## V.  **RECOMMENDATION**

Based on the foregoing, the Court FINDS that Defendant Hampton Roads Shipping Association – International Longshoremen's Association Fringe Benefit Escrow Fund (the "Fund"), which appeared on behalf of HRSA-ILA, is properly before the Court, that the arbitration proceedings were final and binding, but did not foreclose judicial review of a properly-raised hybrid § 301 claim, and that Basnight's claim was timely filed as a matter of law. Accordingly, the Court recommends that the Management Defendants' Motion for Summary Judgment be DENIED, and the Court further recommends that Defendant Bowers's Motion for Summary Judgment, to the extent it incorporated by reference the Management Defendants' Motion for Summary Judgment, be DENIED.

The Court also FINDS that Defendant Bowers is being sued in his official capacity as a union representative, as opposed to his individual capacity, and that in his official capacity Bowers is a proper subject of a properly-raised hybrid § 301 claim.  The Court further FINDS, however, that Basnight's Amended Complaint fails to allege or state specifically what conduct was taken, or failed to

be taken, by Bowers or the ILA, that would have resulted in Basnight's wage reduction so as to properly support a hybrid § 301 claim.  Accordingly, the Court recommends that Defendant Bowers's Motion to Dismiss be DENIED, in part, and GRANTED, in part.

To the extent that Defendant Bowers's Motion to Dismiss has been GRANTED, in part, for Basnight's failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), and recognizing that the cognizability of Basnight's claim against the Management Defendants must rise and fall with his claim against Bowers, the Court recommends that Basnight's Amended Complaint be DISMISSED WITHOUT PREJUDICE as to Basnight's ability to raise a cognizable claim against Bowers in his role as a union representative.

## VI. <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's specific objections within ten (10) days after

being served with a copy thereof.  <u>See</u> Fed. R. Civ. P. 72(b).

2.  A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

Entered on September 28, 2006

                                    /s/
                                  F. Bradford Stillman
                                  United States Magistrate Judge

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Franklin Basnight

3643 Garfield Avenue

Norfolk, Virginia 23502

<u>Pro Se</u>

Dean T. Buckius, Esq.

Vandeventer Black LLP

500 World Trade Center

Norfolk, Virginia 23510

Counsel for Hampton Roads

Shipping Association –

International Longshoremen's

Association Fringe Benefit

Escrow Fund and Hampton

Roads Shipping Association

C. Arthur Rutter III, Esq.

Rutter Mills LLP

160 West Brambleton Avenue

Norfolk, Virginia 23510

Counsel for John Bowers


David A. Buzard, Esq.

David A. Buzard PLC

220 W. Freemason Street, Suite 200

Norfolk, Virginia 23510

Counsel for John Bowers


John Philip Sheridan, Esq.

Gleason & Mathews, P.C.

26 Broadway, 17th Floor

New York, NY 10004

Counsel for John Bowers



Fernando Galindo,

Acting Clerk of Court



By: _____

Deputy Clerk


September    , 2006